INTERCONNECT PLANNING
CORPORATION, Plaintiff,

v.

Thomas E. FEIL, Robert O. Carpenter, V Band Systems, Inc., and Turret Equipment Corp., Defendants.

No. 80 Civ. 6602 (KTD).

United States District Court,
S.D. New York.

June 20, 1984.

Morgan, Finnegan, Pine, Foley & Lee, New York City, for plaintiff; Jerome G. Lee, Alfred P. Ewert, James W. Gould, Robert A. Molan, Richard J. McGrath, New York City, of counsel.

Towne, Dolgin, Sawyier & Horton, and Berger, Steingut, Weiner, Fox & Stern, New York City, for defendants Thomas E. Feil and V Band Systems, Inc.; Daniel L. Dolgin, Peter R. Stern, Hubbell, Cohen, Stiefel & Gross, P.C., New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Defendants, Thomas E. Feil and V Band Systems, Inc. ("V Band") move for partial summary judgment dismissing plaintiff Interconnect Planning Corporation's ("IPC") patent infringement counterclaim that is based on Reissue Patent number 31,144 ("'144") and for judgment on defendants' eleventh counterclaim.[1]

## BACKGROUND

Defendants' motion for summary judgment concerns Reissue Patent '144 based on Patent 3,991,282 ('282). On an earlier motion by defendants for summary judgment, I found Patent '282 invalid for obviousness. *See Interconnect Planning Corp. v. Feil*, 543 F.Supp. 610 (S.D.N.Y. 1982). Thereafter, in accordance with 35 U.S.C. § 251,[2] plaintiff sought and obtained reissue of the patent.

The alleged invention in Patent '282 and Reissue Patent '144 was designed by Feil in 1974 who was then employed by IPC. The '282 patent application was later assigned to IPC by Feil. The claimed invention—a "multi-station telephone switching system"—is stated to be "capable of communicating with any of a large number of standard telephone lines." *See* Defendants' Exh. A (The claims in the reissue patent are attached in the Appendix). "Non-locking pushbuttons are utilized to select the lines connected to each station." *Id.* The system is also called a "trader turret system." As I have previously stated: "[t]his name derives from the principal intended user of the system: a roomful of traders in such markets as commodity futures." 543 F.Supp. at 614.

In 1980, Feil left IPC to join V Band also a defendant in this action. In November 1980, IPC commenced this action against Feil, V Band, Robert O. Carpenter who is an officer of V Band, and Turret Equipment Company which is a subsidiary of V Band. Plaintiff asserted in its complaint claims for patent infringement and unfair competition. At the commencement of the action, plaintiff moved for a preliminary injunction. After a hearing, I denied plaintiff's motion and granted defendants' motion for summary judgment on plaintiff's unfair competition claim. Defendants thereafter moved for summary judgment on plaintiff's claim for patent infringement; I granted defendants' motion and dismissed the complaint. 543 F.Supp. at 619. After reviewing each claim and the relevant prior art, I concluded "that the '282 patent, taken as a whole, would have been obvious at the time of the invention to a person having ordinary skill in the pertinent art." *Id.*

---

1. In their eleventh counterclaim, defendants allege that "plaintiff is attempting to assert the Reissue Patent against these defendants and their customers by threatening defendant and their customers with continuing litigation based on alleged infringement of the Reissued Patent...." Defendants' Second Amended Answer and Counterclaims ¶ 68. Furthermore, defendants allege that the reissue patent "essentially duplicates the relevant claims of the Patent but is narrower in scope in that each of the reissue

claims includes additional limitations," *id.* ¶ 70, but that those limitations "do not patentably distinguish these claims from the prior art," *id.* ¶ 71.

2. The patent law provides that "[w]henever any patent is ... deemed ... invalid ... by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commission shall ... reissue the patent." 35 U.S.C. § 251.

During the pendency of defendants' summary judgment motion, plaintiff filed an application for the reissue of the '282 patent but the Patent Office declined to render a determination until I disposed of the summary judgment motion. After defendants' motion was granted, a meeting was held in September 1982 between the patent examiner and various IPC representatives and IPC's counsel. As a result of the meeting, the '144 reissue application was amended by deleting claims 2, 3, 5, 7–45 and 48, altering the language of claims 1, 4, 6, 46, 47 and 49, and adding claims 50, 51 and 52. The remaining nine claims were renumbered 1 through 9.

The patent examiner granted the reissue patent as amended without any stated reasons; however, the Quality Review division of the Patent Office rejected the reissue. In December 1982, the patent examiner allowed the nine claims but this time provided a statement of reasons in support of his allowance.

On defendants' prior motion for summary judgment, I considered two articles appearing in the Bell Laboratories Record allegedly disclosing the invention in the '282 patent. They were entitled "Voice Communication System For Air Traffic Control" by M.E. Ozenberger published in May 1961 and "A New Switching System for Right-of-Way Companies," by W.H. Keith published in April 1968. The prior art disclosed in the Keith and Ozenberger articles had not been considered by the patent examiner who issued the '282 patent.

In his "Statement of Reasons for Allowance," the patent examiner allowing the '144 reissue stated that "claims 1, 46 and 49 of [the] reissue application patentably define over the Bell Laboratories Record articles...." First, the officer reasoned that both articles described "crossbar switching and common control circuitry to provide the switching as opposed to the 'direct access' switching" of the '282 claims. The examiner stated that the sys-

tems disclosed in the two articles failed to reveal "the holding circuits or the logic circuit" set forth in IPC's patent. Second, the examiner found that IPC's system differed from the system described in the Ozenberger article in that only some of the nonlocking pushbuttons were of the direct access type in the latter system. As to the system described by Keith, the patent examiner stated that the Keith article "fails to disclose the use of non-locking pushbutton switches." Third, IPC's separate active line indicator referred to in claims 1 and 49 was also cited as differing from the Ozenberger system.[3]

Defendants thereafter amended their answer and counterclaims to include claims that related to the invalidity of Reissue Patent '144 and on January 20, 1984, plaintiff filed its Reply to defendants' second amended answer and counterclaims. In its reply, plaintiff included a "compulsory counterclaim" for patent infringement based on the Reissue Patent.

Defendants move for summary judgment dismissing plaintiff's "compulsory counterclaim" contained in its reply and in defendants' favor on their eleventh counterclaim. For the reasons that follow, defendants' motion is granted. Plaintiff's counterclaim is dismissed.

## DISCUSSION

■■■ "[S]ummary judgment is appropriate where there are no genuine issues of material fact and where expert testimony is unnecessary either to elucidate the patent or assist the court in applying the obviousness test." *Janex Corporation v. Bradley Time*, 460 F.Supp. 383, 388 (S.D.N.Y.1978). The patent office has reexamined the reissue patent in light of the relevant prior art; thus, a presumption of validity attaches to it. 35 U.S.C. § 282; *see Plastic Container Corp. v. Continental Plastics*, 607 F.2d 885, 890 (10th Cir.1979), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648

---

**3.** The patent examiner's reasons for allowance will be refuted herein on a claim by claim basis. I note however that the Keith article disclosed a system that utilized non-locking pushbuttons, not locking keys. Thus, the patent examiner's stated difference on that basis is erroneous as a matter of law.

(1980). The burden of proving invalidity is on the patent challenger and the standard is by clear and convincing evidence. *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed.Cir. 1984).

■ The patent laws provide that a patent may not be obtained if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains." 35 U.S.C. § 103. The test for obviousness is whether the "claimed invention considered as a whole would have been obvious or nonobvious." *Jones v. Hardy*, 727 F.2d 1524, 1529 (Fed.Cir.1984). The analysis of a claimed invention "begins with the claims, for they measure and define the invention. Each claim must be considered as defining a separate invention." *Id.* at 1528 (citations omitted).

■ Whether a claimed invention has been disclosed by prior art at the time of the alleged invention depends on (1) the scope and content of the prior art, (2) the differences between the prior art and claims at issue, and (3) the level of ordinary skill in the art. *See Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966); *see also Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1547 (Fed.Cir.1983).[4]

■ On this summary judgment motion, defendants have introduced other prior relevant art not considered by the patent examiner. The presumption of validity, however, does not shift upon the introduction of additional prior art. 722 F.2d at 1549. "It is upon the introduction of art *more* pertinent or *more* relevant than that considered by the PTO ... that the patent challenger's burden may be more easily carried." *Id.* In any case, for the reasons that follow, reference to the additional prior art is unnecessary because I find that

claims 1 through 6 of the Reissue Patent are substantially identical to the corresponding claims in the '282 patent. Thus, they are barred by the doctrine of collateral estoppel. Furthermore, claims 1 through 6 and claims 7 through 9 are disclosed in the prior art considered by the patent examiner. Thus, defendants have sustained their burden of proving by clear and convincing evidence that claims 1 through 9 of Reissue '144 were obvious at the time of the alleged invention.

The doctrine of collateral estoppel applies to the claims in the Reissue Patent that are "substantially identical" to the claims in the '282 patent. *See Plastic Container Corp. v. Continental Plastics*, 607 F.2d at 895; *see also Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971). Those claims are barred by collateral estoppel and therefore invalid without any inquiry into the *Graham v. John Deere Co.*, factors. 607 F.2d at 895; *see also Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 709 (Fed.Cir. 1983). "Any determination of whether collateral estoppel applies must be directed to the claimed invention, *i.e.*, the invention defined by the claims rather than to a broader invention that may be disclosed in the application." 607 F.2d at 894. *But see Westwood Chemical, Inc. v. United States*, 525 F.2d 1367, 1372, 207 Ct.Cl. 791 (1975) (When one claim in a patent differs only slightly from another claim, the question of full and fair adjudication should be directed at "issues" common to those claims, not the claims; this will prevent the attempted relitigation of a prior adjudication). Thus, my inquiry will proceed, claim by claim.

*Claim 1*

Claim 1 in the reissue patent is essentially the same as Claim 1 in the original patent. As I stated in my prior decision, it "describes the basic characteristics of the invention." 543 F.Supp. at 614. The '144 reissue differs in that "pushbutton" is now

---

**4.** I note that plaintiff expends an inordinate amount of effort in asserting its commercial success in arguing that its invention was not disclosed by prior art. Commercial success

however does not save an invalid patent. *See Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 283, 96 S.Ct. 1532, 1538, 47 L.Ed.2d 784 (1976).

modified by "non-locking" and "switch means" is replaced by "switches." These modifications appear throughout the '144 reissue.

Claim 1 in the reissue patent has a paragraph not appearing in the original patent describing an electronic holding circuit consisting of circuit elements that prevent a line from being disconnected when the non-locking key is released and circuit elements that disconnect the line at the appropriate time. The phrase "active line indicator" is added to Claim 1 presumably to distinguish it from the "status light function."

In connection with the first summary judgment motion, I found that "[t]wo existing patents, the Foulkes patent and the Carter patent ... do disclose telephone stations with non-locking buttons, relay coils and pairs of contacts." . 543 F.Supp. at 617. Claim 1 has not been changed in such a way that alters the above finding of disclosure by prior art. Thus, claim 1 is invalid on the grounds of collateral estoppel because it is substantially identical to Claim 1 in the '282 patent. Furthermore, the challenger of the patent, IPC, has established by clear and convincing evidence that Claim 1 was obvious at the time of the alleged invention. *See* Defendants' Exhs. C13, D4–D6 (non-locking buttons);[5] Defendants' Exhs. C4, C7 (holding circuits);[6] Defendants' Exhs. C6, C13 (separate active lines).[7]

*Claim 2*

Claim 2 is equivalent to Claim 4 of the '282 patent. As I have already noted, the phrase "second light display means" has been changed to "active line indicator" and "switch means" is now "switches." The changes made in Claim 4 (now Claim 2) are insignificant; the '282 claim is substantially identical to the '144 claim. Thus, I adhere to my conclusion that the functions described in Claim 4 of the '282 patent were not unique because the Paraskerakos Patent (No. 3,727,033), *see* Defendants' Exh. C8, and the Simon and Torrey Patent (No. 3,928,732), *see* Defendants' Exh. C6, "disclose a mechanism for either digital displays of the calling number or the identification of the line number on which an incoming call is received." 543 F.Supp. at 618. Furthermore, I noted that the Keith article, *see* Defendants' Exh. C13, "introduces a second, separate set of display lamps to indicate the line in use." 643 F.Supp. at 618. In addition, even if not substantially identical, Claim 2 is invalid for the same reasons that Claim 4 in the '282 patent was invalid; defendants have shown by clear and convincing evidence that Claim 2 is disclosed in prior art. Thus, Claim 2 is invalid.

*Claim 3*

Claim 3 is Claim 6 in the '282 patent except that "switches and status lights, said active line indicator" is substituted for "means and said first and second display means." Again, the change in Claim 3 is not significant and does not narrow the claim sufficiently to make it patentable over Claim 6 of the '282 patent. Moreover,

---

**5.** Plaintiff's Exh. C13 is the Keith article which describes Bell Laboratory's 310 Switching System. The 310 System is more fully described in a Bell System Practices article section 981–211–100 (May 1971), *see* Defendants' Exh. D1, which was not before the patent examiner. The introduction of the Bell System Practices article states that "[c]onnection is made as a result of manually operating the appropriate *nonlocking* key at a console." *Id.* at 1.

Defendants' Exhs. D4–D6 are documents relating to the 300 Switching System developed by the Civil Aeronautics Administration, American Telephone and Telegraph Company and Bell Laboratory. The 300 Switching System is used in air traffic control and is the subject of the Ozenberger article. The 300 System also uses nonlocking pushbuttons. *See* Defendants' Exh. D5 (Federal Aviation Agency Specification).

**6.** Defendants' Exhs. C4 and C7 are U.S. Patent No. 3,250,238 issued to Carter and U.S. Patent No. 3,575,056 issued to Foulkes. Carter's patent is for a "Relay Control Circuit." Foulkes' patent is for a "Bipolar Multiplexing Circuit for Telephone Line Selection" which also utilizes relay circuits. The Foulkes patent recites that "[e]ach of these [control] circuits may take any desired and presently known form ... to perform a recognized control function ... includ[ing] the 'hold' feature." Defendants' Exh. C7.

**7.** Defendants' Exh. C6 is U.S. Patent No. 3,928,-732 issued to Simon. It describes an "Extension and Line Indicating Display System For Key Telephone System." The Keith article describing the 310 Switching System also discloses separate active lines.

the claimed invention of housing the keys, status lights, active line indicator and contacts in a console called a turret with the relays located at a remote location was already disclosed at the time of the alleged invention in the Foulkes patent (U.S. Patent No. 3,757,056), *see* Defendants' Exh. C7. Claim 3 is invalid.

*Claim 4*

Claim 4 is nothing more than Claim 46 in the original '282 patent except that the switching system is described as comprising a "holding circuit for each standard telephone line of said plurality of telephone lines to establish a held state after momentary actuation." The holding circuit has been discussed as it pertained to Claim 1 and I will not repeat the reasons herein why the holding circuit was disclosed by prior art at the time of the alleged invention. *See Westwood Chemical, Inc. v. United States*, 525 F.2d at 1372.

*Claim 5*

Claim 5 of Reissue Patent '144 is Claim 47 of Patent '282 with the minor change of substituting "system" for "means" and omitting two phrases. It merely states that the switching system has a location remote from the turret and as I stated with reference to Claim 3, the claim would have been obvious to one of ordinary skill in the art.

*Claim 6*

I stated in my prior decision that Claim 49 (now Claim 6) is "similar to Claim One and provides a summary of all the claims regarding the system." 543 F.Supp. at 616. Claim 6 adds a description of the holding circuit which was also added to Claim 1. Accordingly, for those reasons stated in my 1982 memorandum and order and in my present discussion of Claim 1, I find Claim 6 to be invalid for obviousness.

*Claims 7, 8 and 9*

Claims 7, 8 and 9 are not substantially identical to any claims in the '282 patent. Some of the "issues" incorporated in the three claims however are substantially identical and to that extent they are barred from being relitigated under the doctrine of collateral estoppel. *See Westwood Chemical, Inc. v. United States*, 525 F.2d at 1372.

The claims and issues that have not yet been subjected to a full and fair adjudication must be examined under the analysis espoused by the Supreme Court in *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966).

Reissue Patent '144 includes three claims at the end of the application (numbered 50, 51 and 52) that did not appear in the original '282 patent. Claim 7 (50) which is dependent on Claims 1, 4 (which was 46) and 6 (which was 49), discloses a conference pushbutton and a line release pushbutton. The conference pushbutton permits multi-line connections. The line release pushbutton effectuates the discontinuance of the first line connection when a second line connection is selected.

The Carter patent, *see* Defendants' Exh. C4, discloses the line release pushbutton concept and the 310 Switching System described in the Keith article, *see* Defendants' Exh. C13, discloses the conference connection feature. Thus, I find that Claim 7 is barred for obviousness because it was disclosed by this prior art existing at the time of the alleged invention.

Claim 8(51) details the active line indicators at each station that indicate the line to which the station is connected as well as the line to which every other station in the system is connected. Claim 9(52) states merely that the active line indicators are "illuminated numeric indicators." As I have already stated, the Paraskerakos Patent, *see* Defendants' Exh. C8, and the Simon and Torrey Patent, *see* Defendants' Exh. C6, disclosed the alleged invention of "providing a digital display of the calling number or identification number of the line on which an incoming call is received." 543 F.Supp. at 616. Furthermore, as I have stated, the 310 Switching System, *see* Defendants' Exh. C13, disclosed the use of an active line indicator separate from the status line indicator on multi-line telephone equipment. Thus, I conclude that Claims 8 and 9 (51 and 52) are invalid for obviousness on the basis of the prior art that existed at the time of the alleged invention and they too are deemed invalid.

Accordingly, defendants' motion for summary judgment is granted. Plaintiff's counterclaim is dismissed. Defendant is awarded judgment on its eleventh counterclaim. In connection with plaintiff's remaining counterclaims, the parties are ordered to appear for a pretrial conference on July 5, 1984 at 9:30 a.m. in courtroom 443.

SO ORDERED.

## APPENDIX

### Re. 31,144

I claim:

1. For a telephone system in which telephone communication is capable of being established for each telephone station of a plurality of telephone stations over a standard telephone line by directly connecting each telephone station to a selected standard telephone line of a plurality of standard telephone lines, each of said plurality of standard telephone lines capable of being directly connected to each of said plurality of telephone stations, an improvement comprising:

a plurality of pairs of contacts, with respective pairs of said contacts being connected with respective ones of said standard telephone lines for allowing said communication;

a plurality of relay coils, with respective ones of said relay coils controlling respective pairs of said contacts to be opened or closed;

a plurality of sets of *non-locking* pushbutton [switch means] *switches* with each set of pushbutton [switch means] *switches* connected to respective ones of said telephone stations with respective ones of said pushbutton [switch means] *switches* of said sets of pushbutton [switch means] *switches* corresponding to respective ones of said standard telephone lines and being connected with respective ones of said rely coils and being depressed for energizing ·a selected one of said relay coils for closing a corresponding pair of contacts to allow said telephone communication; [and]

*an electronic holding circuit for each of said relay coils, said holding circuits being operative*

*to establish a held state after initial energization of the associated relay coil by momentarily depressing the associated pushbutton switch, and*

*to maintain said corresponding pair of contacts closed while in the held state;*

*a logic circuit for each station connected to said holding circuits to detect conditions for releasing the held state;*

each of said stations comprising [first light display means] *a set of status lights,* connection means connecting corresponding pushbuttons of said sets of pushbutton [switch means] *switches* in each of said stations and to said [first light display means] *status lights* for energizing said [first light display means] *status lights* in each station to display the status of each of said plurality of standard telephone lines in each of said stations,

said station further comprising [first light display means] *an active line indicator separate from said status lights* connected to said pushbutton [switch means] *switches* for identifying the standard telephone line *of said plurality of standard telephone lines* that the telephone station is using for said telephone communication.

[2. A system as set forth in claim 1, wherein each of said pushbutton switch means comprises a non-locking depressable pushbutton.]

[3. A system as set forth in claim 1, further comprising coder means connected between each pushbutton switch means of each set of said pushbutton means and said second light display means at each station for generating a unique electrical signal corresponding to the selected· pushbutton switch means depressed.]

4. A system as set forth in claim 1, wherein said [second light display means] *active line indicator* comprises a display area and means connected to said pushbutton [switch means] *switches* for producing a numeral on said display area indicating the standard telephone line which is in active communication.

[5. A system as set forth in claim 4, further comprising coder means connected to said pushbutton switch means for generating a unique electrical signal corresponding to the selected pushbutton switch means depressed, the output of said coder means being connected to said second light display means.]

6. A system as set forth in claim 1, comprising a turret housing a respective set of said plurality of sets of said pushbutton [means and said first and second display means] *switches and status lights, said active line indicator,* said plurality of pairs of contacts and *wherein* said plurality of relay coils [being] *is* located remotely from said turret and *further comprising* electrical cable means connecting said turret to said plurality of relay coils for carrying electrical signals to control said relay coils.

[7. A turret located at each telephone station of a plurality of telephone stations for use with a switching system, said switching system establishing telephone communication for each telephone station over a standard telephone line by directly connecting each telephone station to a selected standard telephone line of a plurality of standard telephone lines, said switching system comprising a plurality of pairs of contacts being connected ·

with respective ones of said standard telephone lines for allowing said communication; and a plurality of relay coils, with respective ones of said relay coils controlling respective pairs of said contacts to be opened or closed;

said turret comprising

a plurality of pushbutton switch means for producing an electrical control signal with respective ones of said pushbutton switch means being connected with a respective one of said relay coils for energizing a selected one of said relay coils for closing a corresponding contact pair to allow said telephone communication along said selected telephone line,

panel means for mounting said plurality of pushbutton switch means, and

first light display means, connection means connected between corresponding pushbutton switch means in each of said turrets and said first light display means for displaying in each turret the status of each of said plurality of standard telephone lines, said turret further comprising second light display means connected to said pushbutton switch means for identifying the standard telephone line that the telephone station is using during said telephone communication.]

[8. A turret as set forth in claim 7, wherein said turret further comprises a telephone line panel area for housing said pushbutton switch means and said first light display means, a display panel area for housing said second light display means, and a functional panel are for housing functional pushbutton switch means, all of said panel areas being formed in the same plane.]

[9. A turret as set forth in claim 7, wherein said plurality of standard telephone lines, said plurality of pairs of contacts and said plurality of relay coils are remotely located from said turret, further comprising cable means connected between said turret and said relay coils for controlling the closing of selected pairs of contacts.]

[10. In combination

a plurality of telephone stations;

a plurality of standard telephone lines each being connectable to each of said plurality of telephone stations;

a plurality of pairs of contacts, with respective pairs of said contacts being connected with respective ones of said standard telephone lines for allowing telephone communication with said telephone stations;

a plurality of relay coils, with respective ones of said relay coils controlling respective pairs of said contacts to be opened or closed; and

each of said stations comprising a plurality of pushbutton switch means for producing electrical control signals, with each of said pushbutton switch means being connected with a respective one of said relay coils for energizing a selected one of said relay coils for closing a selected contact pair to allow telephone communication along a selected standard telephone line of said plurality of standard telephone lines;

each of said telephone stations comprising display means connected to said pushbutton switch means in each of said telephone stations for identifying which of said other telephone stations are in active telephone communication.]

[11. A system as set forth in claim 10, wherein each of said stations comprises a turret, each of said turrets comprising a panel for said plurality of pushbuttons at said station, said panel further comprising a display panel area for said display means.]

[12. A system as set forth in claim 11, wherein said display panel area comprises a plurality of turret display areas, each of said turret display areas corresponding to a respective one of said turrets.]

[13. A system as set forth in claim 12, wherein said plurality of turret display areas comprises a plurality of windows, each of said window locations corresponding to a respective one of said turrets.]

[14. A system as set forth in claim 12, wherein each of said turret display areas comprises means for displaying the telephone line of said plurality of standard telephone lines to which each of said respective turrets is actively connected.]

[15. A system as set forth in claim 14, wherein each of said turrets comprises driver means for driving said display means, each of said driver means being controlled by a respective one of said stations to display in each station the status of all other stations, said driver means, controlling said display means to produce an alphanumeric symbol representing the telephone line of said plurality of standard telephone lines to which said respective turret is actively connected.]

[16. A system as set forth in claim 15, wherein said alphanumeric symbol comprises a two-digit decimal base number.]

17. A system as set forth in claim 16, wherein each station comprises code means connected to respective driver means located in each of said plurality of stations, said code means driving said driver means at each of said stations to simultaneously display at all stations the telephone line of said plurality of standard telephone lines to which said respective turret is actively connected.]

[18. A system as set forth in claim 17, wherein said code means comprises a coder, said coder connected to said plurality of pushbutton switch means to produce a two-digit unique code to drive said driver means at each of said stations, said unique code representative of the specific pushbutton switch means and corresponding telephone line selected.]

[19. A system as set forth in claim 10, wherein said display means identifies the telephone line of said plurality of standard telephone lines to which each of said other stations is actively connected.]

[20. A system as set forth in claim 19, wherein each of said stations comprises a plurality of drive means connected to said pushbutton switch means for driving said display means, each of said driver means being controlled by a respective one of said

stations to display in each station the status of said respective one of said stations, said drive means controlling said display means to produce an alphanumeric symbol representing the telephone line of said plurality of standard telephone lines to which each of said respective stations is actively connected.]

[21. A system as set forth in claim 20, wherein said alphanumeric symbol comprises a two-digit decimal base number.]

[22. A system as set forth in claim 21, wherein each station comprises coder means having a plurality of inputs, with each of said inputs connected to a respective one of said plurality of pushbutton switch means and output means connected to each of said plurality of stations, said coder means driving said driver means at each of said stations to simultaneously display at all stations the telephone line of said plurality of standard telephone lines to which each of said stations is actively connected.]

[23. For use with a plurality of standard telephone lines and a plurality of telephone stations;

a master telephone station;

each of said plurality of standard telephone lines connectable to each of said plurality of telephone stations and to said master telephone station;

a plurality of pairs of contacts, with respective pairs of said contacts being connected with respective ones of said standard telephone lines for allowing telephone communication with all of said telephone stations;

a plurality of relay coils, with respective ones of said relay coils controlling respective pairs of said contacts to be opened or closed;

each of said telephone stations and said master station comprising a plurality of pushbutton switch means for producing an electrical control signal with each of said pushbutton switch means being connected with a respective one of said relay coils for energizing a selected one of said relay coils for closing a selected contact pair to allow telephone communication along a selected telephone line of said standard telephone lines;

said master station comprising a plurality of display means with respective ones of said plurality of said display means connected to respective ones of said telephone stations for identifying which of said telephone stations are in active telephone communication; and

signaling means connected to each of said telephone stations for providing a request signal displayed on respective display means at said master telephone station.]

[24. For a telephone system in which telephone communication is capable of being established for each telephone station of a plurality of telephone stations over a standard telephone line by directly connecting each telephone station to a selected standard telephone line of a plurality of standard telephone lines, an improvement comprising

each of said telephone stations comprising a network being capable of establishing two-way telephone communication through said network over said standard telephone line;

a master telephone station; said master station comprising an additional network connectable to each of said plurality of telephone stations enabling said master station to have two-way communication with any of said plurality of telephone stations, said master station being connected to hear the communication at any of said telephone stations;

each of said telephone stations comprising blocking means to block the communication received from said master station from being transmitted to said standard telephone line.]

[25. The system of claim 24, wherein each of said plurality of telephone stations comprises a transmitter and a receiver, said blocking means being connected to said receiver, and shunt means connected across said receiver, said shunt means normally being operative permitting standard two-way telephone communication through said network at said telephone station over said standard telephone lines.]

[26. The system of claim 24, wherein each of said telephone stations comprise a request switch being closed to connect said additional network to a respective telephone station, said master station comprising an answer switch being closed to connect said master station to said additional network.]

[27. In combination

a plurality of telephone stations;

a plurality of standard telephone lines being connectable to each of said plurality of telephone stations;

switching means for selectively directly connecting each telephone station to any one of said plurality of telephone lines to permit said communication;

each telephone station comprising a respective plurality of pushbutton switch means connected to said switching means, each of said respective pushbutton means operating said switching means to connect a corresponding selected telephone line to the corresponding telephone station for active communication; and

each of said stations comprising display means connected to said pushbutton switch means in each of said telephone stations for identifying which of the other stations are in active telephone communication.]

[28. A system as set forth in claim 22, wherein each of said stations comprises a turret comprising said respective plurality of pushbutton switch means, each of said turrets comprising panel means including a panel for said respective plurality of pushbuttons, said panel means further comprising a display panel area for said display means.]

[29. A system as set forth in claim 28, wherein said display panel area comprises a plurality of turret display areas, each of said turret display areas corresponding to a respective one of said turrets.]

[30. A system as set forth in claim 29, wherein said plurality of turret display areas comprises a plurality of windows, each of said window locations corresponding to a respective one of said turrets.]

[31. A system as set forth in claim 29, wherein each of said turret display areas comprises means for displaying the telephone line of said plurality of standard telephone lines to which each of said respective turrets is actively connected.]

[32. A system as set forth in claim 31, wherein each of said stations comprises driver means for driving said display means, each of said driver means being controlled by a respective one of said stations to display in each station the status of said respective one of said stations, said driver means controlling said display means to produce an alphanumeric symbol representing the telephone line of said plurality of standard telephone lines to which said respective station is actively connected.]

[33. A system as set forth in claim 32, wherein said alphanumeric symbol comprises a two-digit decimal base number.]

[34. A system as set forth in claim 33, wherein each station comprises code means connected to respective drivers in each of said plurality of stations, said code means driving said driver means at each of said stations to simultaneously display at all stations the telephone line of said plurality of standard telephone lines to which said respective turret is actively connected.]

[35. A system as set forth in claim 34, wherein said code means comprises a coder, said coder connected to said plurality of pushbutton switch means to produce a two-digit unique code to drive said driver means at each of said stations, said unique code representative of the specific pushbutton switch means and corresponding standard telephone line selected.]

[36. A system as set forth in claim 27, wherein said display means identifies the telephone line of said plurality of standard telephone lines to which each of said respective stations is actively connected.]

[37. A system as set forth in claim 36, wherein each of said stations comprises driver means connected to said pushbutton switch means for driving said display means, each of said driver means being controlled by a respective one of said stations to display in each station the status of said respective one of said stations, said driver means controlling said display means to produce an alphanumeric symbol representing the telephone line of said plurality of standard telephone lines to which said stations are actively connected.]

[38. A system as set forth in claim 37, wherein said alphanumeric symbol comprises a two-digit decimal base number.]

[39. A system as set forth in claim 38, wherein each station comprises coder means having a plurality of inputs with each of said plurality of inputs connected to a respective one of said plurality of respective pushbutton switch means and output means connected to each of said plurality of stations, said coder means driving said driver means at each of said stations to simultaneously display at all stations the telephone line of said plurality of standard telephone lines to which said station is actively connected.]

[40. A system as set forth in claim 27, wherein said display means comprises light generation means for identifying which of said telephone stations is in active communication.]

[41. For use with a plurality of standard telephone lines,

a plurality of telephone stations;

a master telephone station;

each of said plurality of standard telephone lines connectable to each of said plurality of stations and to said master telephone station;

switching means for selectively directly connecting each telephone station to any of said plurality of telephone lines to permit said communications;

each of said stations and said master station comprising a respective plurality of pushbutton switch means connected to said switching means, each of said respective pushbutton means operating said switching means to connect a corresponding selected telephone line to the corresponding telephone station for active communication;

said master station comprising display means connected to said pushbutton switch means in each of said stations for identifying which of said other stations is actively connected to any of said standard telephone lines; and

signaling means connected to each of said stations for providing a request signal displayed at said master station.]

[42. A system as set forth in claim 41, wherein said display means of said master station comprises separate display areas corresponding to each of said stations, said request signal being displayed in said display area corresponding to said station providing said request.]

[43. A system as set forth in claim 42, wherein said display means comprises means to display a representative code corresponding to the active telephone line to which each of said stations is actively connected, said station providing said request producing a signal to periodically turn the displayed code on and off for signaling the request.]

[44. A system as set forth in claim 43, wherein said master station comprises means for establishing a connection between said master station and the station providing the request signal.]

[45. A system as set forth in claim 44, wherein the operator as said station providing the request signal is in telephone two-way communication over a standard telephone line with another operator at another telephone location, said master station comprising means connected to said station providing the request signal to establish connection to said two-way communication, said station providing the request signal comprising switching means for enabling said master station to communicate directly with said station providing the request

signal and blocking means to prevent the operator at said other location from hearing the communication between said master station and said station providing the request signal.]

46. A turret located at each telephone station of a plurality of telephone stations for use with a switching system, said switching system establishing telephone communication for a telephone station over each standard telephone line by directly connecting each telephone station to a selected standard telephone line of a plurality of standard telephone lines, said switching system comprising *a holding circuit for each standard telephone line of said plurality of standard telephone lines to establish a held state after momentary actuation,* switching means for selectively directly connecting each telephone station to any one of said plurality of standard telephone lines *according to said held state* to permit said communication; *and* a logic circuit for each *station connected to said holding circuits to detect conditions for releasing said held state:*

said turret comprising

a plurality of non-locking pushbutton [switch means] *switches* connected to said switching [means] *system,* each of said non-locking pushbutton [means] *switches being connected to momentarily actuate one of said holding circuits when depressed for* operating said switching means to connect a corresponding selected standard telephone line to the telephone station corresponding to said turret for active communication;

panel means for mounting said plurality of pushbutton [switch means] *switches,*

[first light display means] *status indicator lights,* connection means connected between corresponding pushbutton [switch means] *switches* in each of said turrets and said [first light display means] *status lights* for displaying the status of each of said plurality of standard telephone lines, [said turret further comprising second light display means] *an active line indicator* connected to said non-locking pushbutton [switch means] *switches* for identifying the standard telephone line of *said plurality of standard telephone lines* that the telephone station is using during said telephone communication.

47. A turret as set forth in claim 46, wherein said plurality of standard telephone lines[, said plurality of pairs of contacts] and said switching [means] *system* are remotely located from said turret[, further comprising cable means connected between said turret and said switching means].

[48. For a telephone system in which telephone communication is established for each telephone station of a plurality of telephone stations over a standard telephone line by directly connecting each telephone station to a selected standard telephone line of a plurality of standard telephone lines, each of said plurality of standard telephone lines capable of being directly connected to each of said plurality of telephone stations, an improvement comprising

switching means for selectively directly connecting said one telephone station to any one of said plurality of standard telephone lines to permit said communication;

each of said telephone stations comprising a plurality of pushbutton switch means connected to said switching means, each of said pushbutton means operating said switching means to connect a corresponding selected telephone line to said one station for active communication;

said plurality of standard telephone lines and said switching means being remotely located from said plurality of stations;

each of said telephone stations comprising display means connected to said pushbutton switch means in all of said telephone stations for identifying which of said separate telephone lines is connected with which of said stations for active communication; and

electrical cable means connected between each of said stations and said switching means.]

49. For a telephone system in which each telephone station of a plurality of telephone stations can communicate over a standard telephone line by directly connecting each telephone station to a selected standard telephone line of a plurality of standard telephone lines, each of said plurality of standard telephone lines capable of being directly connected to each of said plurality of telephone stations, an improvement comprising,

switching means for selectively directly connecting each telephone station to any one of said plurality of telephone lines to permit said communication;

each of said stations comprising a plurality of nonlocking *momentary contact* pushbutton [switch means] *switches* connected to said switching means to connect a corresponding selected telephone line to each of said stations, for active communication;

*said switching means including a holding circuit for each standard telephone line of said plurality of standard telephone lines, said holding circuits being coupled to said pushbutton switches,*

*being operative to establish a held state after momentary actuation of a pushbutton switch to indicate which pushbutton at which station was actuated, and*

*being operative to connect a selected station to a selected one of said standard telephone lines according to said held state;*

each of said stations comprising [first light display means] *status indicator lights,* connection means for connecting corresponding ones of said push button switch means in each of said stations to said [first light display means] *status indicator lights* for displaying the status of each of said plurality of standard telephone lines [and second light display means] *an active line indicator for each of said stations separate from said status lights and* connected to said nonlocking [pushbuttons] *pushbutton switches and said holding cir-*

cuits for identifying which telephone line *of the plurality of lines* the station is using for active telephone communication *according to a held state of said holding circuits; and*

*a logic circuit for each station connected to said holding circuits to detect conditions releasing the held state.*

50. *The combination according to claim 1, 46 or 49 further including a conference pushbutton and line release pushbutton and wherein said logic circuit releases any holding circuit having a held state associated with a particular station whenever another pushbutton at said associated station is momentarily depressed unless* done in combination with actuation of said conference pushbutton or

whenever said release pushbutton at said associated station is actuated.

51. *The combination according to claim 46 or 49 further including active line indicators at each station for each other station in the system, and wherein said active line indicators at each station indicate the active line to which each telephone in the system is connected.*

52. *The combination according to claim 51 wherein said active line indicators are illuminated numeric indicators.*