**INTERCONNECT PLANNING CORPO-RATION, Plaintiff-Appellant,**

**v.**

**Thomas E. FEIL, Robert O. Carpenter, V Band Systems, Inc., and Turret Equipment Corp.,\* Defendants-Appellees.**

**Appeal Nos. 84–1467, 85–565.**

United States Court of Appeals, Federal Circuit.

Oct. 9, 1985.

---

\* The complaint against Robert O. Carpenter and Turret Equipment Corp. was dismissed by stipulation, and they are not parties to this appeal.

Alfred P. Ewert, Morgan, Finnegan, Pine, Foley & Lee, New York City, argued for plaintiff-appellant. With him on the brief were Jerome G. Lee, Robert A. Molan and Richard J. McGrath.

Howard Karasik, Sherman & Citron, P.C., New York City, of counsel.

Lawrence G. Kurland, Stiefel, Gross, Kurland & Pavane, P.C., New York City, argued for defendants-appellees Feil, et al.; Lance J. Lieberman, Daniel L. Dolgin, Towne, Dolgin, Sawyer & Horton, New York City, Peter R. Stern and Theodore S. Steingut, Berger, Steingut, Weiner, Fox & Stern, New York City, were on the brief.

Before DAVIS, SMITH, and NEWMAN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Interconnect Planning Corporation (IPC) appeals from the summary judgment of the United States District Court for the Southern District of New York, *Interconnect Planning Corp. v. Feil*, 587 F.Supp. 1495, 223 USPQ 961 (S.D.N.Y.1984), holding invalid all the claims of IPC's Reissue Patent No. 31,144 entitled "Multi Station Telephone Switching System", invention of Thomas E. Feil, for failure to meet the conditions for patent validity under 35 U.S.C. § 103, and dismissing IPC's count for patent infringement. We hold that invalidity under § 103 has not been proven, as a matter of law. We vacate the summary judgment of invalidity and dismissal of the infringement count, and remand to the district court.

## Background

The claims of Reissue Patent No. 31,144 are for certain telephone systems known as "trader turrets", which are multi-line telephone consoles used by the financial community in trading networks for securities, commodities, currency, and the like. The purpose of these systems is to facilitate concurrent telephone connections for traders requiring multiple sources of price information, conducting multiple transactions, and generally meeting the communication demands of busy, often hectic, financial trading enterprises. Trading rooms may house a hundred or more trader turrets.

Because of the large number of lines and connections required and the specific needs of these communication networks, these systems are complex. A high degree of reliability is required in their operation, because even momentary failures can be extremely costly.

The record shows that the Feil trader turrets rapidly achieved commercial success, displacing other systems then in use. IPC attributes the success of the Feil invention to its novel system "architecture", which enabled ease of operation, high capacity, and improved reliability over the systems then available. IPC's sales of the Feil trader turrets, according to the record, grew from $320,000 for 20 units in 1974, its first year, to $27,900,000 for 3500 units in 1983.

Thomas Feil, the inventor, was formerly an officer and part owner of IPC. In 1977 Mr. Feil formed the defendant company V Band Systems, Inc., and in 1980 Mr. Feil left IPC and joined V Band, of which he is president and chief executive officer. Defendants make and sell the trader turrets that are here accused of patent infringement.

On November 21, 1980 IPC filed suit in the Southern District of New York asserting infringement of U.S. Patent No. 3,991,-282 (the '282 patent), invention of Thomas Feil. Defendants Feil and V Band raised the defense this patent was invalid in terms of 35 U.S.C. § 103. IPC's count for unfair competition was dismissed by the court and is not before us. Various counterclaims were separated and are apparently still pending.

In May of 1981 IPC filed in the U.S. Patent and Trademark Office (the PTO) an application to reissue the '282 patent. IPC cited to the examiner articles by M.E. Ozenberger and W.H. Keith, both of the Bell Telephone Laboratories, on which articles defendants were relying before the district court, and which had not previously been before the examiner. The district court refused to stay the action before it pending completion of the reissue examination, and therefore the reissue examination was suspended by the PTO in accordance with its rules. On defendants' motion for summary judgment, the district court on June 1, 1982 held all claims of the '282 patent invalid for obviousness under 35 U.S.C. § 103. *Interconnect Planning Corp. v. Feil*, 543 F.Supp. 610, 614–19, 215 USPQ 734, 736–41 (S.D.N.Y.1982).

Following this decision, at IPC's request the PTO resumed examination of the reissue application. The court's decision was provided to and considered by the examin-

er. A supplemental reissue declaration by IPC referred to this decision as a basis for the reissue application. The '282 patent was surrendered, and on February 8, 1983 the PTO granted the reissue patent, RE 31,144, IPC having restricted its claims in various ways and having overcome the newly cited prior art.

Defendants moved for summary judgment of invalidity of the reissue patent, asserting collateral estoppel based on the court's decision on the '282 patent, and also asserting invalidity under 35 U.S.C. § 103. IPC resisted the motion, and the parties' memoranda, affidavits, depositions, and other documents are of record. For reasons similar to those of the 1982 decision, the motion for summary judgment was granted on June 20, 1984.

That decision, holding all of the reissue claims invalid, was certified and made final under Fed.R.Civ.P. 54(b), with instructions by the court that IPC "attempt to have any appeal ... heard at the same time and before the same panel" as any appeal from a decision on the same patent by the United States District Court for the District of New Jersey.[1] We agreed. Both appeals are decided this day.

Although both appeals involved similar issues and argument, specific to the New York suit are certain procedural issues, as discussed *infra*.

### Collateral Estoppel

Defendants argue that IPC's appeal rights are curtailed on the basis of collateral estoppel. Two separate but related issues of estoppel are raised, both arising out of the district court's 1982 decision on the '282 patent.

#### A.

Defendants assert first that IPC can not now appeal from or argue those aspects of the 1984 decision on the reissue patent which are "common to" the 1982 decision on the '282 patent, on the ground that those aspects could have been appealed earlier, and that it is too late to do so now. IPC asserts in response that (1) the issues are not the same, (2) a different patent is involved, and (3) the 1982 decision was not final.

■■■ Considering the finality issue, for collateral estoppel to arise the prior decision need not have been final in the sense of 28 U.S.C. § 1291 but, in the words of the Restatement, the prior adjudication must have been "sufficiently firm to be accorded conclusive effect". Restatement (Second) of Judgments § 13 (1982). Sufficient firmness, according to the Restatement, requires that the party against whom the estoppel is asserted have had the right, even if not exercised, to challenge on appeal the correctness of the earlier decision. Restatement (Second) of Judgment, § 13 reporter's note comment f (1982). Defendants argue that IPC had three such opportunities: appeal under 28 U.S.C. § 1292(a)(1), which governs appeals from interlocutory orders involving injunctions; appeal under 28 U.S.C. § 1292(c)(2), which governs appeals in patent infringement cases final except for an accounting; and appeal under Fed.R.Civ.P. 54(b), which governs judgment on fewer than all of multiple claims in an action.

None of these situations controls the case before us. 28 U.S.C. § 1292(a)(1) relates to orders involving injunctions, and although defendants argue that IPC's complaint necessarily invokes this section, this does not impart automatic appealability to interlocutory orders that do not involve injunctions. As for 28 U.S.C. § 1292(c)(2), the district court's judgment was not final except for an accounting, in light of the pendency of counterclaims. 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice, ¶ 110.19[4], at 220 (1985). Fed.R.Civ. Proc. 54(b) requires that the court have expressly directed entry of a final judgment, and that "[i]n the absence of such determination and direction, any [decision] which adjudicates fewer than all the claims

---

1. *IPC Communications, Ltd. v. Standard Teleservices Supply, Inc.,* No. 81–1832D (D.N.J.1984) (unreported), *vacated and remanded,* No. 84–1599 (Fed.Cir.1985) (unreported).

... shall not terminate the action as to any of the claims". *See also* 6 Moore's Federal Practice ¶ 54.42, at 813.

Neither IPC nor the defendants asked the district court to enter a final judgment on its decision holding the '282 patent invalid, and the court did not do so. Defendants assert, however, that IPC should now be estopped because it did not move for finality of the ruling nor request that the judgment be certified for interlocutory appeal. An application for certification is by no means certain to be granted and, in this case, IPC's eventual request for certification of the original decision was opposed by defendants and was refused by the court.

The law of collateral estoppel is not intended to penalize a party for declining to try to take a piecemeal appeal. Further, the '282 patent had been placed in reissue, and an appeal on the merits of patent claims for which reissue was being sought would have been a meaningless exercise, as may have been recognized at the time.

We conclude that the district court's 1982 decision on the '282 patent claims, a decision not final, not certified, not appealed, and mooted by subsequent events, lacks collateral estoppel effect for the purpose urged by defendants. The issue here on appeal is the validity of the claims of the reissue patent, an issue that did not exist at the time of the decision on validity of the '282 patent claims. There is no estoppel against appellate review of all aspects pertinent to the decision on the reissue claims. 1B Moore's Federal Practice ¶ 0.441[3.-3], at 737.

### B.

IPC asserts that the district court incorrectly invoked collateral estoppel when it analyzed the reissue claims by comparing them with the original claims of the '282 patent, then applying prior art only to the differences between the reissue claims and the original claims. Our predecessor court, the U.S. Court of Claims,[2] has confronted

related situations, wherein estoppel was raised as to unadjudicated claims of a patent whose other claims had been adjudicated in an earlier action. The Court of Claims adopted a pragmatic approach, stating that the first step was to determine whether any new issues were raised as to the nonlitigated claims. In *Westwood Chemical, Inc. v. United States*, 525 F.2d 1367, 1375, 207 Ct.Cl. 791, 187 USPQ 656 (1975), *adopting* 186 USPQ 383, 389 (Ct.Cl. Tr.Div.1975), the court said:

> Where obviousness is the basis for the prior invalidity holding, an inquiry into the identity of the validity issue is more properly phrased in terms of the factual inquiries mandated by *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), as a prerequisite to such a validity determination.

Applying the *Graham* guidelines, the court said:

> Thus, the inquiry should be whether the nonlitigated claims present new issues as to the art pertinent to the nonlitigated claims; as to the scope and content of that art; as to the differences between the prior art and the nonlitigated claims; and as to the level of ordinary skill in that art. If none of these inquiries raises any new triable issues, then the obviousness determination in the prior proceeding should be equally applicable to the nonlitigated claims.

*Id.* See also *Bourns, Inc. v. United States*, 537 F.2d 486, 210 Ct.Cl. 642, 199 USPQ 256 (1976), *adopting* 187 USPQ 174 (Ct.Cl.Tr.Div.1975); *Carter-Wallace, Inc. v. United States*, 496 F.2d 535, 538, 204 Ct.Cl. 341, 182 USPQ 172, 175 (1974) (in determining the applicability of the estoppel, the first consideration is "whether the issue of invalidity common to each action is substantially identical.").

The question of substantial identity of reissue claims arose in *Plastic Container Corp. v. Continental Plastics of Okla-*

---

**2.** In *South Corp. v. United States*, 690 F.2d 1368, 215 USPQ 657 (Fed.Cir.1982), the Federal Circuit adopted as precedent the decisions of the Court of Claims and the Court of Customs and Patent Appeals.

*homa, Inc.*, 607 F.2d 885, 203 USPQ 27 (10th Cir.1979), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648, 204 USPQ 696 (1980), wherein the court determined that the reissue claims were not substantially identical to the original claims, and therefore that collateral estoppel did not apply.

In *Bourns*, responding to plaintiff's argument that according collateral estoppel effect to non-identical adjudicated claims would amount to treating the claims previously held to be invalid as prior art, the court agreed that this would be inappropriate:

> A domino approach in which each successively narrower claim is compared with the one before it, not with the prior art, is inappropriate since it improperly gives prior-art effect to the subject matter of an invalid claim. *In re Craig and Street*, Cust. & Pat.App., 411 F.2d 1333, 1335 (1969).

537 F.2d at 493, 187 USPQ at 179.

■ The district court compared the reissue claims with the '282 claims, and erroneously concluded that reissue claims 1 through 6 were substantially identical to the original claims, and that reissue claims 7 through 9, although not substantially identical, involved some substantially identical "issues".

■ This erroneous legal conclusion may have compounded the error in the next step, wherein the court compared the differences between the original and the reissue claims with prior art that was pertinent only to those differences, thus effectively giving the original claims prior art effect— the pitfall against which *Bourns* cautioned:

> A claim may be invalid for obviousness under 35 U.S.C. § 103 but still describe a combination not found in the prior art. Moreover, it is well settled that each claim of a patent is entitled to a presumption of validity and is to be treated as a complete and independent invention. 35 U.S.C. §§ 282, 288. *Leeds & Catlin v. Victor Talking Machine Co.*, 213 U.S. 301, 319 29 S.Ct. 495, 53 L.Ed. 805 (1909); *Smith Industries International v.*

*Hughes Tool Co.*, 396 F.2d 735, 736 (5th Cir.1968).

*Id.* When a patent has been reissued with claims that are not substantially identical to the original claims, the invention as a whole, as now claimed, must be evaluated in terms of 35 U.S.C. § 103. The original claims, whether valid or invalid, are not prior art against the reissued claims.

### The Summary Judgment

The proceeding from which this appeal is taken was styled "summary", in that the court's decision was made on defendants' motion for summary judgment. The earlier decision on the '282 patent was also made on defendants' motion for summary judgment. IPC contends that the matter was inappropriate to summary judgment, in view of the presence of disputed issues of material fact.

Defendants Feil and V Band argued before the district court, and repeat before us, that no material fact is in dispute, that the questions before the district court and before us in this appeal are purely legal ones, and that the issue was properly dealt with summarily. In its discussion of reissue claims 7 through 9, which claims had no counterpart in the original patent, the district court referred to "claims and issues that have not yet been subjected to a full and fair adjudication", 587 F.Supp. at 1500, 223 USPQ at 965; the court viewed both proceedings as "full" as well as fair, a process not always accomodated by summary proceedings on a documentary record.

■ Obviousness *vel non* under 35 U.S.C. § 103 is a question of law, whose conclusion requires preliminary determination of several underlying factual issues, as set out in *Graham v. John Deere Co.*, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765, 148 USPQ 459 (1966). *See also Gardner v. TEC Systems, Inc.* 725 F.2d 1338, 1344–45, 220 USPQ 777, 782–83 (Fed.Cir.) (in banc), *cert. denied*, 105 S.Ct. 116, 105 S.Ct. 116, 83 L.Ed.2d 60, 225 USPQ 232 (1984). These factual issues relate to the scope and

content of the prior art, the differences between the prior art and the claimed invention as a whole, the level of ordinary skill in the art at the time the invention was made, and the so-called "secondary considerations" that reflect the contemporaneous response to the invention.

In reviewing IPC's assertions that there were genuine issues of material fact relating to the *Graham* inquiries, we have reviewed the submissions of the parties. Before the court, according to the record, were all the references cited as prior art; as well as the depositions of Examiner Randall P. Myers of the United States Patent and Trademark Office, engineer John Fitzmaurice of New York Telephone, and inventor/defendant Thomas E. Feil; and various documentary exhibits. Also of record were the affidavits of Alan R. Fitzpatrick, president of American Telecommunications Concepts; IPC's technical experts Dennis Maywald and Herbert Goldwag; Thomas P. Bradbury, vice president and treasurer of IPC; and extensive written submissions and arguments.

Although fact and opinion are intertwined in many of these documents, the factual considerations required by the *Graham* analysis appear to have been adequately presented in the record. The technological structure and operation of the devices of the prior art were not in material dispute,[3] although there was strong dispute about the relationship of the teachings of the references to the problems solved by the Feil system, and the weight to be given to evidence of the Feil invention's commercial success.

The district court stated that expert testimony was unnecessary, *Interconnect Planning Corp. v. Feil*, 587 F.2d at 1497, 223 USPQ at 963, and held all of the reissue claims invalid. As will be discussed, we think that the district court reached this conclusion by incorrectly applying the law of 35 U.S.C. § 103.

### *35 U.S.C. § 103*

██ Those charged with determining compliance with 35 U.S.C. § 103 are required to place themselves in the minds of those of ordinary skill in the relevant art at the time the invention was made, to determine whether that which is now plainly at hand would have been obvious at such earlier time.

The invention must be viewed not with the blueprint drawn by the inventor, but in the state of the art that existed at the time.

The invention must be evaluated not through the eyes of the inventor, who may have been of exceptional skill, but as by one of "ordinary skill". *See Stewart-Warner Corp. v. City of Pontiac, Michigan*, 767 F.2d 1563, 1570, 226 USPQ 676, 680–81 (Fed.Cir.1985).

This is not a facile statutory interpretation. The quality of non-obviousness is not easy to measure, particularly when challenged years after the invention was made. That which may be made clear and thus "obvious" to a court, with the invention fully diagrammed and aided, in this case, by a hostile inventor seeking to eliminate his own invention, may have been a breakthrough of substantial dimension when first unveiled.

The judicial application of uniform standards for determining compliance with 35 U.S.C. § 103 is essential, because the technological incentives fostered by the patent system depend on consistent interpretation of the law. To this end, faithful adherence to the patent statute and guiding precedent fosters uniformity in result.

---

**3.** IPC argues that the district court should not have resolved any question of substantial identity between the claims of the original and reissue patents in defendants' favor because that is a contested fact question which should not have been resolved against the nonmovant, citing *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193, 1200, 181 USPQ 75, 80 (6th Cir.1974).

Under this court's precedent substantial identity between claims, a matter of claim interpretation, is a question of law. *See, e.g., Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956, 220 USPQ 592, 596 (Fed.Cir.1983), *cert. denied,* — U.S. ——, 105 S.Ct. 127, 83 L.Ed.2d 69, 225 USPQ 232 (1984).

## A.

Following examination by the Patent and Trademark Office, a duly issued patent is presumed valid, as is a duly reissued patent. The burden of proving otherwise resides with the person challenging its validity. 35 U.S.C. § 282.

This statutory presumption derives in part from recognition of the technological expertise of the patent examiners. A reissue application receives a fresh examination, normally concentrated on those references and reasons that occasioned its filing. The record shows that this reissue application received a supplemental internal review by three examiners because it was involved in litigation.

Although IPC's view is incorrect that the PTO's decision must be given controlling weight, we do agree that the examination procedure and result should be given appropriate consideration and due weight by the court. As stated in *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555, 225 USPQ 26, 31 (Fed.Cir.1985), "[t]he Examiner's decision, on an original or reissue application, is never binding on the court. It is, however, evidence the court must consider in determining whether the party asserting invalidity has met its statutory burden by clear and convincing evidence".

Upon reissue the "burden of proving invalidity was made heavier", as stated in *Fromson, supra.* This burden must be met by the party asserting invalidity. The district court here relied on the identical references that had been before the reissue examiners, and disdaining the need for expert testimony, reached a different conclusion in law. Although we affirm the obligation of the district court to reach an independent conclusion, the reissue patent reaches the court clothed in a statutory presumption of validity, and clear and convincing evidence is required to surmount this presumption. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359–60, 220 USPQ 763, 770 (Fed. Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 95, 83 L.Ed.2d 41, 224 USPQ 520 (1984).

## B.

The court referred to the content of the prior art references in broad terms, occasionally using the title of a reference to explain its pertinence. In this crowded art of telephone systems, as IPC correctly pointed out, it is not enough to show that each of the components used by Feil was known, and had been used in other telephone systems. Feil did not claim to have invented any of the components of his claimed system.

From its discussion of the prior art it appears to us that the court, guided by the defendants, treated each reference as teaching one or more of the specific components for use in the Feil system, although the Feil system did not then exist. Thus the court reconstructed the Feil system, using the blueprint of the Feil claims. As is well established, this is legal error. *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 774, 218 USPQ 781, 791 (Fed.Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1284, 79 L.Ed.2d 687, 224 USPQ 520 (1984).

Illustrative is the court's analysis of reissue claim 1. Pertinent is not only its analysis of the differences between the reissue claim and the prior art, but also the differences between the reissue claim and the original claim. In claim 1, matter enclosed in brackets appeared in the original claim but forms no part of the reissue claim, and matter printed in italics was added by reissue:

1. For a telephone system in which telephone communication is capable of being established for each telephone station of a plurality of telephone stations over a standard telephone line by directly connecting each telephone station to a selected standard telephone line of a plurality of standard telephone lines, each of said plurality of standard telephone lines capable of being directly connected to each of said plurality of telephone stations, an improvement comprising:

   a plurality of pairs of contacts, with respective pairs of said contacts being

connected with respective ones of said standard telephone lines for allowing said communication;

a plurality of relay coils, with respective ones of said relay coils controlling respective pairs of said contacts to be opened or closed;

a plurality of sets of *non-locking* pushbutton [switch means] *switches* with each set of pushbutton [switch means] *switches* connected to respective ones of said telephone stations with respective ones of said pushbutton [switch means] *switches* of said sets of pushbutton [switch means] *switches* corresponding to respective ones of said standard telephone lines and being connected with respective ones of said relay coils and being depressed for energizing a selected one of said relay coils for closing a corresponding pair of contacts to allow said telephone communication; [and]

an *electronic holding circuit for each of said relay coils, said holding circuits being operative*

to establish a held state after initial energization of the associated relay coil by momentarily depressing the associated pushbutton switch, and

to maintain said corresponding pair of contacts closed while in the held state;

a *logic circuit for each station connected to said holding circuits to detect conditions for releasing the held state;*

each of said stations comprising [first light display means] *a set of status lights,* connection means connecting corresponding pushbuttons of said sets of pushbutton [switch means] *switches* in each of said stations and to said [first light display means] *status lights* for energizing said [first light display means] *status lights* in each station to display the status of each of said plurality of standard telephone lines in each of said stations,

said station further comprising [first light display means] *an active line in-dicator separate from said status lights* connected to said pushbutton [switch means] *switches* for identifying the standard telephone line *of said plurality of standard telephone lines* that the telephone station is using for said telephone communication.

Reissue claim 1 was held invalid on two grounds. The first ground was that it was substantially identical to claim 1 of the '282 patent, and thus invalid on the basis of collateral estoppel. The court in its 1982 decision referred to Carter U.S. Patent No. 3,150,238 and Foulkes U.S. Patent No. 3,757,056 as disclosing "non-locking buttons, relay coils and pairs of contacts" as applied to the original claim 1. In the 1984 decision the court stated that "Claim 1 has not been changed in such a way that alters the above finding of disclosure by prior art". 587 F.Supp. at 1499, 223 USPQ at 964. This treatment of the reissue claim is not supported by the claim content, as will be apparent from the court's further discussion of claim 1.

As the second ground for its holding of invalidity the court analyzed the changes made by reissue. The court identified three areas as *new* to reissue claim 1, and applied five references to these areas as follows: "*See* Defendants' Exhs. C13, D4–D6 (non-locking buttons); Defendants' Exhs. C4, C7 (holding circuits); Defendants' Exhs. C16, C13 (separate active lines)." *Id.* at 1499, 223 USPQ at 964 (footnotes omitted).

The first set of cited exhibits refers to articles by Keith, "A New Switching System for 'Right of Way' Companies", *Bell Laboratories Record,* Apr. 1968, and Ozenberger, "Voice Communication System for Air Traffic Control", *Bell Laboratories Record,* May 1961, which the court stated taught the use of non-locking pushbuttons. The second set refers to the Carter patent, which the district court said teaches a "Relay Control Circuit" (the title of the Carter patent), and the Foulkes patent which "recites that '[e]ach of these [control] circuits may take any desired and presently known form ... to perform a recognized control

function ... evaluat[ing] the 'hold' feature'". *Id.* at 1499 n. 6, 223 USPQ at 946 n. 6. The third set of exhibits refers to Simon U.S. Patent No. 3,928,732, which the district court described by its title, "Extension and Line Indicating Display System for Key Telephone System", and Keith, which the district court stated "also discloses separate active lines". *Id.* at 1499 n. 7, 223 USPQ at 964 n. 7.

The court's analysis of the scope of the new material in reissue claim 1 in itself shows the error in the court's conclusion that as a matter of law reissue claim 1 is substantially identical to its parent claim. The claim limitations of the electronic holding circuits for each relay coil, the logic circuit, and separate active line indicator, in combination with the non-locking pushbutton switches connected to the relay coils, were added by reissue. Observing these differences, their relationship to the invention as a whole, and the prior art, we conclude as a matter of law that reissue claim 1 is not substantially identical to the original claim. The 1982 decision, which was directed to the original claims, does not apply to the reissue claims. Collateral estoppel as a basis for the court's holding of invalidity is not supported in law.

Having determined that a reissue claim is not substantially identical to the parent, the parent claim is of no further moment. As stated in *Wayne-Gossard Corp. v. Moretz Hosiery Mills, Inc.*, 539 F.2d 986, 991, 191 USPQ 543, 546–47 (4th Cir.1976), "the original claim was at an end, denuded of all potency save as a bench mark of interpretation, at the time of the reissue's infringement."

The original claim is not prior art against the reissue claim. It is not correct to weigh the reissue claim against the original claim. It is not correct to weigh the changes in the reissue claim against the original claim. It is the reissue claim alone that is to be analyzed in accordance with the *Graham* guidelines, and the differences to be considered are the differences between the reissue claim as a whole and the prior art.

In the court's 1982 analysis of the original claims, to which the court referred in its 1984 decision, the court had identified "six principal features which plaintiff argues are not obvious" and explained why the court concluded that these features are obvious by referring to various prior art references showing various of the features in various contexts. *Interconnect Planning Corp. v. Feil*, 543 F.Supp. at 617, 215 USPQ at 739. As we have observed, it is the emphasis on the obviousness of "features", rather than the claimed telephone system as a whole, that constitutes the flaw in the application of section 103 to the Feil claims. As stated in *In re Shuman*, 361 F.2d 1008, 1012, 150 USPQ 54, 57 (CCPA 1966):

> It is impermissible to first ascertain factually what appellants *did* and then view the prior art in such a manner as to select from the random facts of that art only those which may be modified and then utilized to reconstruct appellants' invention from such prior art.

The court in 1982 summarized its conclusion with respect to these six "features" by observing (1) that although the pairs of contacts and relay coils "is not disclosed in either the Keith Article or the Ozenberger Article", the Foulkes and Carter patents do disclose them; (2) that Keith, Ozenberger, and Foulkes refer to pushbutton switches; (3) that Keith shows a set of display lamps although Ozenberger uses a single lamp, and that Paraskevakos (U.S. Patent No. 3,727,003) and Simon et al. show either a digital display or the incoming line number; (4) that Paraskevakos shows a decoder and that "the diode matrix was no mystery to one engineer" (Thomas Fitzmaurice, of Bell Labs, who testified that he readily understood the Feil system after he was shown it); (5) that Keith shows which lines are active; and (6) that the asserted unique master station hook up with blocking means is shown in Ozenberger and a Verdon patent (U.S. Patent No. 3,819,871). *Interconnect Planning Corp. v. Feil*, 543 F.Supp. at 617–19, 215 USPQ at 739–40.

In its 1984 decision the court added the additional citations of references pertinent to the changes in the reissue claims, as discussed above. As in its citation of references against the various features of the original claims, the court selected from each reference a feature or features that also appeared in the reissue claims. No reference, however, suggested the overall arrangement, the "architecture", of the Feil system.

IPC presented affidavit testimony explaining the references in the context of the state of the telephone systems art at the time, none of which testimony was controverted other than by attorney argument. The most advanced multi-line devices at the time the invention was made, according to this record, used the then state-of-the-art crossbar switching equipment, and electrical or mechanical interconnections or interlocks. The two Bell Labs publications of Keith and Ozenberger, on which defendants and the district court placed substantial emphasis, used crossbar switching. Feil did not.

Mr. Feil's affidavit filed with the district court states "The Ozenberger and Keith articles disclose what I thought I invented in 1974". Mr. Feil made no reference to the crossbar switches required by these references, and offered no discussion of either differences or similarities between his system and those of these references.

The Carter patent used relay switches in the telephone switching system it describes. Carter, of Bell Laboratories, taught the use of quick-release control relays in combination with slow-release work relays, to achieve the specific purposes desired by Carter. Carter also required use of a "locking chain" rather than independently operating relays, and a more complex communication path as compared with Feil's direct connections. Feil established multiple direct connections in a system where theretofore it was believed, according to the record, that crossbar switches would be required.

The Feil system eliminated both crossbar switches and mechanical interlocks or mechanically locking pushbuttons, and instead used relays, a well-known type of switch. But Feil avoided the need (of Carter) to establish potentially large numbers of contacts and operate a concomitantly large number of relays in series in order to connect stations within the system. As IPC's uncontroverted testimony shows, Feil avoided interconnections and interlocks, both of which, according to the Maywald affidavit, had previously been considered necessary to lock out faults. The Maywald affidavit stated that Carter's approach would be "impossible and impractical" in the trader turret application because "[t]o try and accurately control the release times of different relays over a long period of time would be virtually impossible considering the wear and deterioration of components" in a "trader turret network involving some 20,000 or more relays". Maywald's explanation of the technical operation of the references is uncontradicted, although defendants take issue in attorney argument with Maywald's conclusions.

The Foulkes patent, on which the district court also relies, described a "bipolar multiplexing circuit" based on a "contact tree" relay switching arrangement. Foulkes taught a telephone system that Maywald avers, without contradiction, "could not be realistically expanded into large systems like trader turrets". The district court did not explain how the Foulkes or other systems of different circuitry made obvious the different system of Feil's claims.

The Keith and Ozenberger systems, as previously discussed, are different systems from that of Feil. Like the systems of the other references, they contain some elements in common with that of Feil. The Ozenberger system, based on crossbar switches, was designed for air traffic control. The Keith system is described as tailored to the specific needs of "right-of-way" companies, and is a cordless system limited to up to eight consoles of up to a hundred lines. As Keith says, "[a] system of crossbar switches is the heart of the switching system". Neither Keith nor Ozenberger suggests that the crossbars be

replaced with relays and that the other changes be made to produce the admittedly different Feil system.

The novelty of the Feil system is not controverted by the defendants. Its value in trader turret systems has received the ultimate recognition, market success and imitation.

■ 35 U.S.C. § 103 requires that obviousness be determined with respect to the invention as a whole. *See, e.g., Jones v. Hardy,* 727 F.2d 1524, 1528, 220 USPQ 1021, 1024 (Fed.Cir.1984); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1548, 220 USPQ 303, 309 (Fed.Cir. 1983), *cert. denied,* 105 S.Ct. 172 (1984); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1537, 218 USPQ 871, 877 (Fed. Cir.1983). This is essential for combination inventions, for generally all combinations are of known elements. *Environmental Designs, Ltd. v. Union Oil Co. of California,* 713 F.2d 693, 698, 218 USPQ 865, 870 (Fed.Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 709, 79 L.Ed.2d 173, 224 USPQ 520 (1984).

■ When prior art references require selective combination by the court to render obvious a subsequent invention, there must be some reason for the combination other than the hindsight gleaned from the invention itself. *ACS Hospital Systems, Inc. v. Montefiore Hospital,* 732 F.2d 1572, 1577 & n. 14, 221 USPQ 929, 933 & n. 14 (Fed.Cir.1984). There must be "something in the prior art as a whole to suggest the desirability, and thus the obviousness, of making the combination". *Lindemann Maschinenfabrik GmbH v. American Hoist and Derrick Co.,* 730 F.2d 1452, 1462, 221 USPQ 481, 488 (Fed.Cir.1984).

Critical to the analysis is an understanding of the particular results achieved by the new combination. The claims here at issue are directed to a combination of known components of telephone systems in an admittedly new way to achieve a new total system. Neither the district court in its opinion, nor the defendants, identified any suggestion in the prior art that the

components be combined as they were by Feil or that such combination could achieve the advantages of the Feil system.

Not only must the claimed invention as a whole be evaluated, but so also must the references as a whole, so that their teachings are applied in the context of their significance to a technician at the time—a technician without our knowledge of the solution. The defendants propounded and the district court appears to have followed an analytical method that well illustrates the "mosaic" analogy discussed in *W.L. Gore & Assocs.,* 721 F.2d at 1552, 220 USPQ at 312, where this court said:

> [T]he claims were used as a frame, and individual, naked parts of separate prior art references were employed as a mosaic to recreate a facsimile of the claimed invention.

Defendants refer to the decision of the Supreme Court in *Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784, 189 USPQ 449 (1976). As the Court there held, Sakraida's combination of old elements to wash barn floors with flowing water did not produce a new or different function, and affirmed the district court's holding that " 'all of the elements of [the combination] are old ... and the combination of them ... being neither new nor meeting the test of non-obviousness.' " *Id.* at 274, 96 S.Ct. 1533–34, 189 USPQ at 450. In the Feil invention the combination was admittedly new, and it produced a new system having theretofore unavailable attributes.

Recognizing the difficulty of casting one's mind back to the state of technology at the time the invention was made, courts have long recognized the usefulness of evidence of the contemporaneous attitude toward the asserted invention. A retrospective view of the invention is best gleaned from those who were there at the time. Mr. Feil, the inventor impugning his own invention, now avers that he did no more than did the prior art, specifically the Keith and Ozenberger articles. Mr. Feil's disavowal of his invention is staunch, although he less modestly commented in 1977, be-

fore he left IPC, on the reaction of Bell Labs' engineer at that earlier time:

> He [Fitzmaurice] showed too much enthusiasm. I mean, he was really excited by the thing. Like this is incredible. You guys are geniuses. You're 50 miles ahead of Bell Labs. (App.Vol. VI, F357).

\* \* \* \* \* \*

> You know what he said. He said You're 50 miles ahead of Bell Lab? He said "miles", not years, he made it in miles. You're 50 miles ahead of the Bell Labs. (App.Vol. VI, F355).

Mr. Elia of the Republic Bank, one of IPC's customers, attested:

> Upon viewing the equipment, the AT & T people indicated that it was unbelievable. They did not think it could be done. They were surprised that it was done. (App.Vol. VI, F360).

Although the district court remarked in its 1982 decision that evidence of commercial success "cannot be afforded any weight" "in light of my finding of obviousness", 543 F.2d at 619, 215 USPQ at 741, such evidence when present must be considered and afforded appropriate weight. *Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, 739 F.2d 1573, 1575, 222 USPQ 744, 746 (Fed.Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985); *Jones v. Hardy,* 727 F.2d at 1530, 220 USPQ at 1026; *Medtronic, Inc. v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563, 1575, 220 USPQ 97, 105 (Fed.Cir. 1983); *Stratoflex, Inc.,* 713 F.2d at 1538–39, 218 USPQ at 879; *In re Sernaker,* 702 F.2d 989, 996, 217 USPQ 1, 7 (Fed.Cir. 1983); *In re Mageli,* 470 F.2d 1380, 1383, 176 USPQ 305, 307 (CCPA 1973). IPC offered affidavit and deposition evidence, by two experts in telephone systems and by a Bell system engineer knowledgeable in the field of trader turrets. Their uncontroverted testimony was to the effect that the Feil system was perceived at the time as an exceptional technological achievement.

The requirement that "secondary considerations" be considered in determinations under section 103 aids in evaluating the state of the art at the time the invention was made. *In re Piasecki,* 745 F.2d 1468, 1475, 223 USPQ 785, 790 (Fed.Cir. 1984). It is not pertinent that the invention was easily understood after it was made—a factor that appears to have been considered significant by the district court, *see* 543 F.Supp. at 619, 215 USPQ at 741—but whether it would have been obvious to make the invention at the time. Giving due weight to the market success and contemporaneous reaction to the Feil trader turret system, the record does not contain clear and convincing evidence that the Feil invention of the reissue claims would have been obvious to one of ordinary skill in this art at the time the invention was made.

Reissue claims 2–9 are either dependent on reissue claim 1, include similar limitations, or include additional limitations. Although each claim has been considered separately, they need not here be treated in redundant detail. For each claim we are compelled to the conclusion that the burden of proving invalidity by clear and convincing evidence has not been met.

The summary judgment of invalidity of Reissue Patent No. 31,144, in terms of 35 U.S.C. § 103, is vacated, as is the dismissal of the infringement claim. The case is remanded to the district court for further proceedings consistent herewith.

VACATED and REMANDED.