845 F.2d 1034
 9 ITRD 2600
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
ROTRON, INC., Appellant,
v.
UNITED STATES INTERNATIONAL TRADE COMMISSION, Appellee,
and
Matsushita Electric Corporation of America, and Matsushita
Electric Industrial Co., Ltd., Intervenors.
 No. 87-1099.
 United States Court of Appeals, Federal Circuit.
 Feb. 18, 1988.
 
 Before FRIEDMAN, PAULINE NEWMAN, and BISSELL, Circuit Judges.
 PAULINE NEWMAN, Circuit Judge.
 
 DECISION
 
 1
 On appeal by Rotron, Inc., we reverse that portion of the decision of the International Trade Commission[1] holding invalid claims 3 and 9 through 12 (the only claims before us) of United States Patent No. 4,494,028 (the Rotron '028 patent). The Commission's determinations that the claims if valid were infringed, and that the Matsushita imports caused substantial injury to an efficiently and economically operated United States industry, were not appealed. We remand for proceedings consistent herewith.
 
 OPINION
 
 2
 The Rotron '028 patent, entitled "Integral Coaxial Commutation and Rotor Magnets and Apparatus and Method for Making Same", describes a one piece rotor magnet that is particularly suitable for use in a two-phase direct current motor. A segment of the magnet serves as a field magnet, and integrated therewith is the commutation portion. The field portion has north and south radially magnetized regions, separated by unmagnetized "true null" regions. The following illustration is from the Rotron '028 patent, with identifying words added:
 
 
 3
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 TABLE
 Claim 9 is illustrative:
 
 4
 9. An integral annular field and commutation magnet for a brushless DC motor having inteat axially displaced first and second locations, said commutation portion comprising integral alternating oppositely radially magnetized commutation magnet sectors in close succession around the annular commutation magnet portion and the field magnet portion comprising integral oppositely radially magnetized field magnet sectors and integral substantially unmagnetized sectors of substantial angular length angularly adjacent radially magnetized sectors in the field magnet portion and defining null sectors.
 
 
 5
 To review the Commission's holding of law that the claimed invention would have been obvious in terms of 35 U.S.C. Sec. 103, we first review the Commission's factual findings.[2] Rotron asserts that certain findings essential to the decision of the Commission and the Administrative Law Judge ("ALJ") are not supported by substantial evidence, and that the conclusion of invalidity based on these findings is incorrect. The ALJ made 73 findings of fact on the issue of validity; we discuss only those aspects critical to our holding.
 
 A. The prior art
 
 6
 The Commission's determination of invalidity relied principally on two Japanese laid-open patent applications ("JLOPA")[3]: No. 56-10066 (the '066 JLOPA), and No. 51-129605 (the '605 JLOPA). Neither of these, nor a third JLOPA No. 53-23008 that was considered by the Commission and the ALJ, had been before the United States patent examiner. All three of these JLOPA's were owned by the Matsushita intervenors.
 
 
 7
 Matsushita asserts that the '066 JLOPA disclosure distinguishes between "effectively unmagnetized" sectors and true null sectors. The '066 JLOPA illustrates its unmagnetized sector as follows:
 
 
 8
 Figures 7 and 8 show an example of a field magnet having an effectively nonmagnetized pole ... [which] in this example is formed by placing an even number of narrow N and S poles together, so that ... its absolute maximum value ... becomes quite small compared to the absolute maximum values at the N and S poles....
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 Needless to say, the effectively nonmagnetized pole can also consist of empty space.
 
 
 12
 The ALJ found that the '066 JLOPA teaches that a nonmagnetized pole may be obtained by simply avoiding magnetizing it. Such disclosure appears nowhere in the '066 JLOPA. The '066, like the other prior art of record, describes only the structure or method for producing "effective" nulls.
 
 
 13
 Further, as the ALJ found, the '066 JLOPA shows axial, not radial magnetization. Rotron observes that a radially magnetized commutation portion on the inner surface of the '066 magnet is absent, and that the '066 prevents cogging by placing grooves in the stator portion of the motor. Rotron states that the '066 JLOPA's pattern of 120? sectors of north-south-null is ineffective to prevent cogging: an asserted purpose and advantage of the Rotron '028 invention. These facts are uncontroverted, and indeed the ALJ expressly found that the '066 does not teach how a one-piece magnet with true nulls would be magnetized.
 
 
 14
 We conclude that the disclosure of the '066 JLOPA does not substantially support the ALJ's finding that the '066 JLOPA teaches not only the use of "effectively nonmagnetized" sectors, but also the use of true nulls. 5 U.S.C. Sec. 706(2)(E).
 
 
 15
 The '066 reference does not add substance to the prior art showing "effective" null regions that was considered by the United States Patent and Trademark Office or by the Commission: for example the "dipole" or juxtaposed north-south regions shown in Muller U.S. Patent 4,211,963; or a void (and thus unmagnetized) airspace as in the '008 JLOPA, which shows a 120? void cut into a circular field magnet that is radially magnetized; or the use of non-magnetic inserts, shown in Wessels U.S. Patent 3,299,335.
 
 
 16
 As for the magnetization pattern, Muller shows the axial disposition of field and commutation parts on a tubular magnet, but Muller also shows 120? of null between 120? of north and 120? of south, a pattern recognized as ineffective to prevent cogging in a two-phase DC motor. Wessels shows a north-south-zero-north-south-zero pattern, as does Rotron, but Wessels as noted uses non-magnetic inserts and not true nulls. Wessels in particular provides support for the conclusion that the Rotron invention would not have been obvious, for it is not explained why Wessels would construct so complex a structure if it were known or obvious how to simply use true nulls as the unmagnetized portion.
 
 
 17
 The '605 JLOPA reference shows a motor that Rotron describes, without apparent contradiction, as a three-phase motor and thus not subject to cogging. Matsushita's expert witnesses testified that the '605 JLOPA teaches a fixture that they could have modified to produce Rotron's pattern of true nulls in the '066 magnet. The '605 JLOPA shows nulls in the commutation portion of a field/commutation magnet, and a magnetization pattern whereby true nulls are produced in the form of separated poles of identical polarity: for example, a pattern of south-zero-south-zero-south. The field portion of the '605 magnet does not have nulls of any type, although this is the portion of the Rotron '028 magnet in which the nulls are provided to avoid cogging.
 
 
 18
 Matsushita also testified that it knew how to, and had, created the structure of the Rotron invention prior to the filing date of the '028 patent. The ALJ made no findings as to this asserted prior invention, the existence of which Matsushita emphasizes on this appeal. That knowledge was not disclosed in the '066, '605, or '088 JLOPA's. Private knowledge is not prior art. See 35 U.S.C. Sec. 102.
 
 
 19
 B. The objective evidence.
 
 
 20
 The reaction of the marketplace to a patented invention is often significant to an objective evaluation of obviousness. Akzo N.V. v. U.S. Int'l Trade Comm'n, 808 F.2d 1471, 1480-81, 1 USPQ2d 1241, 1246 (Fed.Cir.1986), cert. denied, 107 S.Ct. 2490 (1987). A new device that achieves commercial success, displacing the products of the prior art, has met a far more pragmatic test than that which can be applied in the courtroom. See Safety Car Heating & Lighting Co. v. General Electric Co., 155 F.2d 937, 939, 69 USPQ 401, 403 (2d Cir.1946) (L. Hand, J.):
 
 
 21
 Courts, made up of laymen as they must be, are likely either to underrate, or to overrate, the difficulties in making new and profitable discoveries in fields with which they cannot be familiar; and, so far as it is available, they had best appraise the originality involved by the circumstances which preceded, attended and succeeded the appearance of the invention.... We have repeatedly declared that in our judgment this approach is more reliable than a priori conclusions drawn from vaporous, and almost inevitably self-dependent, general propositions. [Citations omitted]
 
 
 22
 The law governing obviousness determinations so recognizes. Graham v. John Deere Co., 383 U.S. 1, 17-18, 148 USPQ 459, 467 (1966). All objective evidence must be considered. See Custom Accessories, Inc. v. Jeffrey-Allen Indus., Inc., 807 F.2d 955, 960, 1 USPQ2d 1196, 1199 (Fed.Cir.1986), and cases cited therein.
 
 
 23
 The ALJ dismissed the evidence of commercial success, stating that "[t]he '028 patent was intended only to achieve cost savings. The only impact on sales that the one-piece rotor in Rotron's brushless DC motors has had is the reduction of costs that allowed Rotron to lower its prices." However, the ALJ also found that "there was a growing need for cost savings in connection with brushless DC fans in 1984 because of suddenly increased competition", and that "[r]eduction of cost in brushless DC motors in view of their relative costliness has been a continuing goal".
 
 
 24
 The Commission attributed Rotron's commercial success to the fact that the '028 motor is small, simple to manufacture, and inexpensive, and held that these attributes are not "linked to" the merits of the claimed invention. However, simplicity of construction can reflect technological advance, as Judge Hand remarked in Reiner v. I. Leon Co., 285 F.2d 501, 504, 128 USPQ 25, 28 (2d Cir.1960), cert. denied, 366 U.S. 929 (1961):
 
 
 25
 [E]conomy of production is as valid a basis for invention as foresight in the disclosure of new means.
 
 
 26
 See also van Veen v. United States, 386 F.2d 462, 465, 156 USPQ 403, 405 (Ct.Cl.1967) ("Experience has shown that some of the simplest advances have been the most nonobvious"). The commercial success of a patented device must always be considered. See Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co., 730 F.2d 1452, 1461, 221 USPQ 481, 487 (Fed.Cir.1984) ("A showing of commercial success of a claimed invention, wherever such success occurs, is relevant in resolving the issue of non-obviousness"). When a patented device is a commercial product, there is an inference that its commercial success is due to the patented device itself, absent a clear showing to the contrary. See, e.g., Hughes Tool Co. v. Dresser Indus., Inc., 816 F.2d 1549, 1556, 2 USPQ2d 1396, 1402 (Fed.Cir.) ("Such continuous use of the patented feature while other features were not copied gives rise to an inference that there is a nexus between the patented feature and the commercial success"), cert. denied, 108 S.Ct. 261 (1987). In Astra-Sjuco, A.B. v. U.S. Int'l Trade Comm'n, 629 F.2d 682, 689-90, 207 USPQ 1, 8 (CCPA 1980), the court said:
 
 
 27
 [T]he fact that the Poncy sheath package had advantages over the prior art proposals which made it a practical product, both from the standpoint of the cost of manufacture and from the standpoint of reliability and simplicity establishes the nexus between the invention and its proven success.
 
 
 28
 Accord Railroad Dynamics, Inc. v. A. Stucki Co., 579 F.Supp. 353, 366-67, 218 USPQ 618, 628 (E.D.Pa.1983) ("the testimony as to the advantage of the spaced structure with the biasing spring easily supports the inference that the claimed invention itself was responsible for this [commercial] success"), aff'd, 727 F.2d 1506, 220 USPQ 929 (Fed.Cir.), cert. denied, 469 U.S. 871 (1984). In the present case the advantages identified by the Commission were attributes of the claimed invention. There was no countervailing evidence that its success was due, for example, to advertising or other factors unrelated to its technological advantages.
 
 
 29
 Rotron agrees that it invented a simpler, easier to construct, miniature motor. That was its purpose, and that is the motor that achieved commercial success.
 
 
 30
 The Commission's finding that Rotron's commercial success was unrelated to the '028 claimed invention is not supported by substantial evidence. 5 U.S.C. Sec. 706(2)(E).
 
 
 31
 C. The obviousness analysis.
 
 
 32
 The statute requires that obviousness be determined from the viewpoint of one of ordinary, not extraordinary, skill, Stewart-Warner Corp. v. City of Pontiac, Michigan, 767 F.2d 1563, 1570, 226 USPQ 676, 680-81 (Fed.Cir.1985) ("section 103 is not concerned with the actual skill of the inventors--whose skill may be extraordinary--but rather with the level of ordinary skill in the art"). To show obviousness the prior art must also teach how to make the patented device. See Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 435 (1911); Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1568, 1 USPQ2d 1593, 1597 (Fed.Cir.), cert. denied, 107 S.Ct. 2187 (1987); Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1143, 227 USPQ 543, 551 (Fed.Cir.1985).
 
 
 33
 The ALJ found that the '066 JLOPA teaches true nulls and that the magnetization fixture of the '605 JLOPA, modified as described by Matsushita's expert, could produce such nulls. The ALJ erred in treating the testimony of expert witnesses, as to what they could have done (but did not do), as persuasive of what would have been obvious to a person of ordinary skill. See Uniroyal, Inc. v. Rudkin-Wiley Corp., No. 86-1300, slip op. at 9 (Fed.Cir. Jan. 3, 1988):
 
 
 34
 [The district court] has impermissibly used hindsight to reconstruct the claimed invention from prior art with the invention before it and aided by Uniroyal's expert, rather than viewing the invention from the position of a person of ordinary skill at the time it was made.
 
 
 35
 The present case is not one in which experts provided helpful explanations of the prior art and the level of skill in the art. Here, the experts themselves filled the technological gaps in the prior art.
 
 
 36
 The testimony of experts is not prior art, and testimony as to how experts could have made the patented invention does not of itself show that such manipulation would have been obvious to one of ordinary skill. See EWP Corp. v. Reliance Universal, Inc., 755 F.2d 898, 905, 225 USPQ 20, 24 (Fed.Cir.), cert. denied, 474 U.S. 843 (1985):
 
 
 37
 In discussing this reference, the trial judge, closely tracking the testimony of appellee's professorial patent expert witness, Dr. Starkey, instead of applying the more relevant teachings of this patent to the issue of obviousness, concentrated on Fig. 19 because it related to pipe.... It is not Fig. 19 that is significant in this case, but the other clear teachings of the reference. The "expert" testimony misdirected the court's thinking.
 
 
 38
 Matsushita's expert witness Dr. Kusko testified that he could adapt the '605 fixture to place true nulls into the '066 structure, by making "certain modifications", as Matsushita and the Commission call it, and "extensive changes", as Rotron calls it. Matsushita's witnesses did not refer to any teachings in the prior art as to such adaptation, or any teaching as to how the '605 process for creating a magnetization pattern could be adapted to create true nulls in the '066 magnet and in the '066 magnetization pattern.
 
 
 39
 Dr. Kusko testified that a person of ordinary skill "could have built" the '066 JLOPA motor with true nulls. He also testified that it would have been obvious to change the '066 JLOPA magnetization from 120? of null to two separated 45? null sectors as used by Rotron, although he pointed to no prior art teaching that this be done. Thus, although Matsushita's expert witness testified that he could have placed true nulls of the Rotron pattern in the '066 JLOPA device, the '065 JLOPA does not suggest that this be done, or how. Interconnect Planning, 774 F.2d at 1143, 227 USPQ at 551.
 
 
 40
 The testimony of experts that they could have made the device that Rotron made is not sufficient of itself. The technological manipulations require sufficient support in the prior art, not solely in the intellect of experts. See W.L. Gore & Associates, Inc. v. Garlock, 721 F.2d 1540, 1551, 220 USPQ 303, 311 (Fed.Cir.1983), cert. denied, 469 U.S. 851 (1984). Without treating the expert testimony as if it were prior art, there was not substantial evidence supporting the Commission's conclusion that the Rotron '028 claimed invention would have been obvious in view of the prior art.
 
 
 41
 No reference or combination of references, without the additional manipulation by Matsushita's experts, shows or suggests the Rotron '028 integral rotor magnet with true nulls separating the magnetized sectors and with abutting, radially magnetized field and commutation portions. On this record, we conclude that the presumption of validity of the '028 patent had not been overcome. See Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1383, 231 USPQ 81, 93 (Fed.Cir.1986), cert. denied, 107 S.Ct. 1606 (1987). The decision of the Commission that the Rotron '028 patent is invalid, is reversed.
 
 
 42
 In view of the Commission's determinations of infringement and of injury, violation of 19 U.S.C. Sec. 1337 is adjudged as a matter of law. The case is remanded for appropriate further proceedings.
 
 
 
 [1]
 Certain Fans with Brushless DC Motors, Inv. No. 337-TA-228 (U.S. Int'l Trade Comm. Oct. 10, 1986)
 
 
 [2]
 The Commission's factual findings and conclusions must be upheld if supported by substantial evidence; legal conclusions are reviewed for correctness. 5 U.S.C. Sec. 706(2)(A) and (E). See Tandon Corp. v. U.S. Int'l Trade Comm'n, 831 F.2d 1017, 1019, 4 USPQ2d 1283, 1284-85 (Fed.Cir 1987). The presumption of patent validity must be overcome by clear and convincing evidence. See Lannom Mfg. Co. v. U.S. Int'l Trade Comm'n, 799 F.2d 1572, 1578-79, 231 USPQ 32, 37 (Fed.Cir.1986)
 
 
 [3]
 The Japanese laying open occurs eighteen months after the filing date of a Japanese patent application for which examination had been deferred in accordance with Japanese practice. The JLOPA is treated under United States law as a printed publication. 35 U.S.C. Sec. 102